UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| OPERATIONS NY LLC., | : | Chapter 7 |
| | : | Case No.: 10-13446 (SMB) |
| Debtor. | : | |

------------------------------------------------------------------X

| | | |
|---|---|---|
| ANGELA TESE-MILNER, Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -- against -- | : | Adv. Pro. No.: 12-01783 (SMB) |
| | : | |
| EDIDIN AND ASSOCIATES, FRANKLIN | : | |
| CAPITAL HOLDINGS LLC d/b/a FRANKLIN | : | |
| CAPITAL NETWORK, GARY EDIDIN, | : | |
| CLAUDIO GOTTARDI, MICHAEL LEEN, | : | |
| HAMID JOHANNES MAHMOOD and MATTEO | : | |
| GOTTARDI, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------------X

## MEMORANDUM DECISION PARTIALLY GRANTING AND
## PARTIALLY DENYING MOTION TO DISMISS THE COMPLAINT

**A P P E A R A N C E S :**

STAHL COWEN CROWLEY ADDIS, LLC
*Attorneys for Defendants*
55 West Monroe, Suite 1200
Chicago, Illinois 60603

      Scott Schreiber, Esq.
      John K. Burnett III, Esq.
        Of Counsel

KORNFELD & ASSOCIATES, P.C.
*Attorneys for Plaintiff*
570 Lexington Avenue, 19th Floor
New York, New York 10022

      Randy M. Kornfeld, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**UNITED STATES BANKRUPTCY JUDGE:**

The plaintiff, the chapter 7 trustee of the debtor Operations NY LLC (the "Debtor"),

brought this adversary proceeding to avoid and recover three transfers aggregating $279,839.61

(the "Transfers"). (*See Complaint*, dated Aug. 12, 2012 (ECF Doc. # 1).) The *Complaint* asserts

claims sounding in intentional and constructive fraudulent transfer, unjust enrichment, preference

and conspiracy. The defendants have moved to dismiss the *Complaint* pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure ("Federal Civil Rules") made applicable to this adversary

proceeding by Fed. R. Bankr. P. 7012(b) for failure to state a claim upon which relief can be

granted.

For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

The Debtor was formed in 2004 by the defendants Matteo Gottardi, Michael Leen and

Johannes Mahmood to import, design and sell men's and women's garments. (¶ 15.)[1] The

Debtor opened its "flagship" store at 60 Mercer Street in Manhattan in 2005 and entered into a

lease with Chelsea/Village Associates LLC ("CVA") regarding space for a second store at 50

Ninth Avenue in Manhattan in or about May 2008. (¶ 16.) The individual defendants are board

members and own interests in the Debtor. (¶¶ 10-14.) The plaintiff alleges upon information

and belief that the defendant Edidin and Associates ("Edidin Associates") is an unincorporated

business organization wholly owned by defendant Gary Edidin ("Gary"), the defendant Franklin

Capital Holdings LLC d/b/a Franklin Capital Network ("Franklin"), is a limited liability

company also owned by Gary, and both entities operate from the same location in Highland

---

[1] Unless stated otherwise, parenthetical citations to paragraphs and exhibits refer to the *Complaint*.

2

Park, Illinois.  (*See* ¶¶ 8-9.)  Gary, Franklin and Edidin Associates are sometimes referred to below collectively as the "Edidin Defendants."

## A.    The Transfers

The Transfers at issue were made over the course of a year and were wired into an account in the name of Edidin Associates at Cole Taylor Bank in Chicago on the following dates and in the following amounts:

| Date of Transfer | Amount ($) |
| --- | --- |
| 09/09/2008 | 100,000.00 |
| 09/28/2009 | 100,000.00 |
| 09/29/2009 | 79,839.61 |

(¶¶ 31-34 & Ex. A.)[2]  Documents supplied by Franklin and discussed below indicate that identical amounts were transferred on the same dates into Franklin's account at the same bank.

The reasons for the Transfers are the subject of dispute.  The plaintiff mainly contends that the Transfers were part of a scheme to transfer assets in fraud of creditors to an insider. According to the *Complaint*, the Debtor's bank statements covering the period January 2006 through August 2010 do not show that the Debtor received any funds from the Edidin Defendants, (¶ 47), supporting the allegation, made on information and belief, that these defendants did not provide any goods or services in exchange for the Transfers.  (¶ 35.)

---

[2]    The Edidin Defendants insist that the transfers were made to Franklin and the only evidence of transfers to Edidin Associates is notations in the Debtor's books and records.  (*See* ¶¶ 41-42.)  They are wrong.  The excerpts of the bank statements attached to the *Complaint,* which were redacted apparently to hide the account numbers, show the Transfers were wired into Edidin Associates' account.

The defendants' motion papers, however, indicate a business rationale. The moving memorandum attached two letters dated June 6, 2012 and July 9, 2012, and the exhibits that accompanied those letters, and where appropriate, the Court will refer to the letters and their enclosures collectively as the "Letters." The *Complaint* attached the June 6, 2012 letter as Exhibit C but omitted the enclosures. It did not attach the July 9, 2012 letter but quoted from the letter and certain of its enclosures, and ultimately based its claim against Franklin on the content of the Letters. In the June 6, 2012 letter and enclosures, the defendants' counsel provided evidence that Franklin had entered into a Factoring Agreement, dated May 15, 2008, with the Debtor, and enclosed the Factoring Agreement and a UCC-1 financing statement, filed three weeks before the Factoring Agreement, which related to a security interest in most or all of the Debtor's assets.[3] The July 9, 2012 letter and enclosures further explained that the September 2008 transfer repaid a letter of credit provided by Franklin. The September 2009 transfers represented the proceeds of payments by Levi Strauss & Co. that were owed to Workshop, factored by Franklin and mistakenly paid to the Debtor. However, the invoices bore the name "Operations" – which could refer to the Debtor or Workshop – originated from the Debtor's "flagship" Mercer Street address, and included the Debtor's web address (operationsny.com). (July 9, 2012 letter,[4] at Ex. B, C; *Complaint* ¶ 50.) Furthermore, defendant Leen had testified that Levi Strauss was a customer of the Debtor. (*Complaint* ¶ 49.)

## B.    The Other Fraudulent Scheme

---

[3]    The June 6, 2012 letter also enclosed a UCC-1 Financing Statement filed July 17, 2009. The debtor identified in the statement is Operations Workshop LLC ("Workshop"), an affiliate of the Debtor. According to this UCC-1, Workshop operated from the Mercer Street location, which was also the Debtor's store.

[4]    The July 9, 2012 letter is attached as Exhibit A to the *Defendant's Memorandum of Law in Support of Their Motion to Dismiss the Complaint*, dated Sept. 13, 2012 ("*Defendants' Memo*") (ECF Doc. #7).

The *Complaint* also includes allegations of a separate scheme by the "Operations NY Defendants" to defraud CVA.[5]  These allegations have no apparent connection to the Transfers, and the *Complaint* does not assert any claims or seek any relief based on this scheme.  According to the plaintiff, the Debtor owed CVA $100,000 in rent arrears by the end of April 2009.  On May 5, 2009, the owners of the Debtor formed Workshop, and "transferred all remaining assets of the Debtor, including client accounts, to Operations Workshop, LLC."[6]  (¶ 18.)  On May 7, 2009, the Debtor "secretly vacated" the Ninth Avenue store in the middle of the night to avoid eviction, taking with it all of its remaining inventory, equipment furniture and other assets.  (¶ 17.)  Ten months later, when CVA was about to obtain a judgment against the Debtor, Workshop and its ownership liquidated all of the Debtor's remaining assets.[7]  (¶ 27.)  Finally, after CVA sued the Debtor, the Debtor misrepresented to the state court that the Debtor and Workshop were the same entity.  (¶¶ 21-25.)  The misrepresentation enabled the Debtor to avoid a pre-judgment attachment.  (¶ 26.)

## C.    The Bankruptcy

On June 29, 2010, CVA filed an involuntary petition against the Debtor.  The Court ordered relief on August 19, 2010, and the United States Trustee appointed the plaintiff to serve as chapter 7 trustee of the Debtor's estate.

---

[5]      The Operations NY Defendants refer to defendants in a pre-petition state court action brought by CVA, (¶ 20), and described in the succeeding text.  The only Operations NY Defendants specifically identified in the *Complaint* are Matteo Gottardi and Leen.  (¶ 21.)  The Operations NY Defendants may also include Gary, Claudio Gottardi and Johannes Mahmood, *i.e.,* all of the individual defendants.  (*See* ¶¶ 112-13.)

[6]      According to the *Complaint*, Workshop was the lessee under the lease for the Mercer Street Store.  (¶ 16 n. 1.)  The Debtor opened the Mercer Street store in 2005, four years before Workshop was formed.

[7]      The *Complaint* alleged that the Debtor had transferred all of its assets to Workshop in May 2009.  The *Complaint* does not identify the assets of the Debtor that were liquidated in March 2010.  In addition, the *Complaint* does not allege that the liquidation proceeds were fraudulently transferred.

The plaintiff filed this adversary proceeding on August 3, 2012.  The *Complaint* consists of nine counts.  The first eight are asserted against the Edidin Defendants and Count IX is directed against the individual defendants.  Counts I through VI assert claims sounding in intentional and constructive fraudulent transfer under bankruptcy and New York law.  Count VII asserts a claim of unjust enrichment, (¶¶ 94-100), Count VIII alleges an insider preference with respect to the two September 2009 transfers, (¶¶ 101-09), and Count IX charges that the individual defendants conspired to defraud the Debtor's creditors through the Transfers and the other scheme directed against CVA.  (¶¶ 110-18.)

The Defendants have moved to dismiss the *Complaint* for failure to state a claim under Federal Civil Rule 12(b)(6).  In the main, they contend that the *Complaint* is based upon conclusory statements and formulaic recitations of statutory requirements without any supporting facts.  They also argue that the *Complaint* improperly relies on "group pleading," and fails to satisfy the pleading requirements for fraud in connection with the intentional fraudulent transfer claims.

## DISCUSSION

### A.     Standards Governing the Motion

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  *Iqbal* outlined a two-step approach in deciding a motion to dismiss.  First, the court should begin by "identifying pleadings that, because they are no more than [legal] conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of action supported by conclusory statements" are not factual. *See id.* at 678.

6

Second, the court should give all "well-pleaded factual allegations" an assumption of veracity and determine whether, together, they plausibly give rise to an entitlement of relief. *Id.* at 679.

Courts do not decide plausibility in a vacuum. Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. A complaint that only pleads facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992); *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 665 (S.D.N.Y. 2010). Where the complaint cites or quotes from excerpts of a document, the court may consider other parts of the same document submitted by the parties on a motion to dismiss. *131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1532 n. 23 (S.D.N.Y. 2010).

7

As noted, the *Complaint* attached the June 6, 2012 letter without the exhibits, and failed to attach the July 9, 2012 letter or exhibits to that letter but quoted from and relied on both. The defendants attached both letters and exhibits to their motion papers, and the plaintiff objected.[8] The Court asked the parties to brief the question whether the Court could consider the documents submitted by the defendants, but only the defendants submitted a supplemental memorandum.[9] This may amount to a concession by the plaintiff that the Court can consider these documents, but even without this concession, the Court may do so.

The Letters were sent to the plaintiff's counsel before she drafted the *Complaint*, so she obviously possessed them and knew their contents. The *Complaint* attached the June 6, 2012 letter which became part of the *Complaint*, FED. R. CIV. P. 10(c), and the attachments, although omitted by the plaintiff, are referred to in and integral to understanding the import of the letter. In addition, the *Complaint* quoted from it. (*See* ¶¶ 41-42.) The *Complaint* did not attach the July 9, 2012 letter, but again quoted from the letter as well as the invoices that were attached. (¶¶ 46-51.) Moreover, the plaintiff concedes that she relied on the information supplied by the defendants' counsel to assert claims against Franklin in the *Complaint*. (*Plaintiff's Opposition* at 13-14.) The Letters also enclosed Franklin's bank statements showing receipt of the Transfers, and the July 9, 2012 letter discussed Franklin's receipt of the Transfers in detail. Accordingly, the Court will consider the Letters in connection with the motion to dismiss.

---

[8]    *See Memorandum of Law in Opposition to Defendants Edidin and Associates, Franklin Capital Holdings LLC D/B/A/ Franklin Capital Network, Gary Edidin, Claudio Gottardi, Michael Leen, Hamid Johannes Mahmood and Matteo Gottardi's Motion to Dismiss Adversary Proceeding*, dated Oct. 16, 2012, at 16 n. 7 ("*Plaintiff's Opposition*") (ECF Doc. # 11).

[9]    By sheer coincidence, and as the Court was putting the finishing touches on this opinion, plaintiff's counsel submitted an email to chambers today that purported to attach a November 29, 2012 letter brief on the same issues. According to the email, plaintiff's counsel sent the letter brief to the wrong email address (Bernstein.chambers@nysd.uscourts.gov) on November 29, 2012. Anything sent to the email address identified by the plaintiff's counsel would have "bounced back" and the plaintiff should have known immediately that the Court did not receive it. Moreover, the plaintiff never filed the letter brief on the docket. Accordingly, the Court will not consider it.

Before turning to the analysis of each of the claims, the Court will address the issues

regarding group pleading and the insufficiency of factual detail.  The group pleading objection

directed at Counts I through VIII lacks merit.  The *Complaint*, including the Letters, sets forth

the role of each Edidin Defendant.  Edidin Associates received the Transfers, (¶¶ 31-34), as

reflected in the bank statements attached to the *Complaint*.  The Debtor's internal accounting

documents enclosed with the July 9, 2012 letter provide additional factual support for the

contention that Edidin Associates received the transfers.

The *Complaint* also alleges that Edidin Associates is an unincorporated business

association wholly-owned by Gary.  This implies that it is a sole proprietorship, making the

Transfers to Edidin Associates the equivalent of transfers to Gary individually.

Finally, Franklin has provided documentary evidence that it received the Transfers on the

same day that they were made.  This is not necessarily inconsistent with the allegation that

Edidin Associates received the Transfers in the first instance either as an initial transferee or as a

conduit for Franklin as the initial transferee.  The Franklin bank statements submitted with the

Letters do not show the source of the funds deposited into Franklin's account.

The defendants are correct that many of the allegations in the *Complaint* are made upon

information and belief, are conclusory or amount to formulaic recitations of the statutory

requirements relating to each claim.  The Court has ignored these allegations.  Nevertheless,

there is enough factual detail amplified by the documentary evidence and discussed below to

conclude that some of the claims are legally sufficient.

B.    **Intentional Fraudulent Transfers**

Portions of Count I and Count V assert claims against the Edidin Defendants sounding in intentional fraudulent transfer and conveyance.  A claim to avoid an intentional fraudulent transfer or conveyance must satisfy the pleading requirements of Federal Civil Rule 9(b) and plead the claim with particularity.[10]  *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005); *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987); *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 428 (Bankr. S.D.N.Y. 1998).  Although scienter may be pleaded generally, the pleader must "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).[11]  The "strong inference" requirement is appropriate to ward off allegations of "fraud by hindsight." *See, e.g.*, *Shields*, 25 F.3d at 1129 (quoting *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.)).  A strong inference of fraudulent intent may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 1128; *accord ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  To qualify as "strong," "the inference of scienter must be more than merely 'reasonable' or 'permissible' — it must be cogent and compelling, thus strong in light of the other explanations." *Tellabs*, 551 U.S.

---

[10]      Rule 9(b) states:

(b) Fraud or Mistake; Conditions of Mind.  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

[11]      The discussion that follows borrows heavily from case law interpreting the standard for pleading scienter in securities fraud actions brought under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Congress adopted the Second Circuit's "strong inference" standard when it enacted the PSLRA. *Tellabs*, 551 U.S. at 321. The same standard has been applied in this Circuit to non-securities fraud claims. *See Serova v. Teplen*, No. 05 Civ.6748(HB), 2006 WL 349624, at *8 (S.D.N.Y. Feb. 16, 2006).

at 324.  The court must consider the inferences urged by the plaintiff and the competing

inferences rationally drawn from the facts alleged.  *Id*.  "A complaint will survive, we hold, only

if a reasonable person would deem the inference of scienter cogent and at least as compelling as

any opposing inference one could draw from the facts alleged."  *Id.*

      Both New York law and the Bankruptcy Code permit a trustee to avoid transfers of the

debtor's property made with actual intent to defraud.[12]  The *Complaint* adequately alleges that

the Debtor made the Transfers from its own property.[13]  In addition, for the reasons stated, the

*Complaint* and Letters provide a factual basis for the allegations that the Transfers were made to

Edidin Associates and then re-transferred to Franklin, or alternatively, made directly to Franklin.

      The more difficult question relates to the sufficiency of the allegation that the Debtor

intended to defraud its creditors.  Fraud rarely admits of direct proof, and courts have identified

certain factors or badges.  These are "circumstances that accompany fraudulent transfers so

commonly that their presence gives rise to an inference of intent."  *Capital Distrib. Servs., Ltd. v.*

*Ducor Express Airlines, Inc.*, 440 F. Supp. 2d 195, 204 (E.D.N.Y. 2006); *accord Sharp Int'l*, 403

---

[12]     Section 276 of the New York Debtor & Creditor Law ("DCL"), available to a trustee through the operation
of 11 U.S.C. § 544(b), provides:

     Every conveyance made and every obligation incurred with actual intent, as distinguished from
     intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent
     as to both present and future creditors.

     Bankruptcy Code § 548(a)(1)(A) provides in pertinent part:

     The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . .
     . incurred by the debtor, that was made or incurred on or within 2 years before the date of the
     filing of the petition, if the debtor voluntarily or involuntarily—

     (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud
     any entity to which the debtor was or became, on or after the date that such transfer was made or
     such obligation was incurred, indebted.

[13]     The July 9, 2012 letter stated that the September 2009 payments were made from funds that were held in
constructive trust for Franklin, and were not made from the Debtor's property.  The Edidin Defendants moving
memorandum made a passing reference to this idea without discussion of the provisions of the Factoring Agreement
or citation to any legal authority.  (*Defendants' Memo* at 2, 18.)  Accordingly, the Court will not consider the
contention.

F.3d at 56; *Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC*, No. 07CV6665(HB),

2009 WL 1803458, at *20 (S.D.N.Y. June 23, 2009), *aff'd*, 402 Fed. Appx. 623 (2d Cir. 2010).

These include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close
> associate relationship between the parties; (3) the retention of possession, benefit
> or use of the property in question; (4) the financial condition of the party sought
> to be charged both before and after the transaction in question; (5) the existence or
> cumulative effect of a pattern or series of transactions or course of conduct after
> the incurring of debt, onset of financial difficulties, or pendency or threat of suits
> by creditors; and (6) the general chronology of the events and transactions under
> inquiry.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983); *accord Wall St.*

*Assocs. v. Brodsky*, 684 N.Y.S.2d 244, 248 (N.Y. App. Div. 1999).

The *Complaint* alleges that the Debtor's bank statements show that the Debtor never

received any money from or factored any accounts receivable with the Edidin Defendants.  (¶

47.)  In addition, the excerpts of the Debtor's September 2008 and 2009 bank statements

attached to the *Complaint* show that the Debtor made the Transfers by wire to an account in the

name of Edidin Associates, and the Debtor had no ostensible reason to pay Edidin Associates

anything.  These facts are a sufficient basis to infer that the Debtor did not receive any

consideration on account of the Transfers.  Franklin contends that the September 2008 transfer

repaid a letter of credit, and the September 2009 transfers related to a Factoring Agreement

between the Debtor and Franklin, but these factual disputes cannot be resolved on a motion to

dismiss.

Some of the other badges are present, at least with respect to the two September 2009

transfers.  The *Complaint* alleges that at least as of the end of April 2009, the Debtor was facing

financial difficulty.[14]  At that time, the Debtor owed CVA approximately $100,000 in rent

arrears.  (¶ 17.)  The *Complaint* also alleges that the Debtor engaged in a fraudulent course of

conduct, albeit unrelated to the Transfers, directed at CVA.  In addition, the *Complaint* implies

that the Edidin Defendants disingenuously tried to shield themselves from the plaintiff's charges

by concocting a story that the Levi Strauss invoices were generated by Workshop and factored

by Franklin.  Finally, the Debtor made the Transfers to Gary, an insider, d/b/a Edidin Associates.

On the other hand, the *Complaint* does not allege that the Debtor retained the use of or

control over the funds after the Transfers, and there is no basis to infer that it did.  Gary, whether

individually, or as the sole owner of Edidin Associates and Franklin, was only one of five owners

and directors of the Debtor.  The *Complaint* does not allege that Gary had any control over the

funds while they were in the Debtor's bank account or that he did not operate the business of

Edidin Associates and Franklin independently.  The Debtor's lack of control after the Transfers

tests the limits of plausibly inferring fraudulent intent.  One is left to wonder why the Debtor

would intentionally pay money it did not have to pay to a third party simply to defraud its

creditors.

Nevertheless, the Court concludes that the *Complaint* asserts a sufficient number of

badges of fraud to survive the motion to dismiss the intentional fraudulent transfer claims

directed at the Edidin Defendants with respect to the September 2009 transfers.  *See Max

Sugarman Funeral Home, Inc. v. A.D.B. Invs.*, 926 F.2d 1248, 1254-55 (1st Cir. 1991) ("The

presence of a single badge of fraud may spur mere suspicion . . . the confluence of several can

---

[14]        The Complaint does not allege or imply that the Debtor was facing any financial problems when it made
the September 2008 transfer.  Moreover, the *Complaint* alleges that the Debtor entered into a ten-year lease for the
Ninth Avenue store in May 2008.

constitute conclusive evidence of an actual intent to defraud, absent 'significantly clear' evidence

of a legitimate supervening purpose") (citation omitted).  The intentional fraudulent transfer

claims relating to the September 2008 transfer are dismissed.

## C.    Attorneys' Fees

Count VI asserts a claim for reasonable attorneys' fees under DCL § 276–a.[15]  Section

276–a allows a creditor to recover its attorneys' fees if it proves that both the transferor and

transferee acted with actual fraudulent intent.  By its terms, DCL § 276–a is derivative of an

actual fraudulent transfer claim under DCL § 276.  Hence, it "stands or falls" with the disposition

of that claim.  *Atlanta Shipping*, 818 F.2d at 245 n. 1; *Gowan v. Westford Asset Mgmt. LLC (In*

*re Gowan)*, 462 B.R. 474, 494 (Bankr. S.D.N.Y. 2011); *see Starmark, Inc. v. Zaccaria*, No. 91

Civ. 2764 (JFK), 1992 WL 209288, at *2 (S.D.N.Y. Aug. 17, 1992) (denying motion to dismiss

claim under DCL 276–a on the ground that it did not state an independent claim because the

claim was dependent on plaintiff's ability to prevail on its claim under DCL § 276); *Combina*

*Inc. v. Iconic Wireless Inc.*, No. 4222/2011, 2011 WL 3518185, at *5 (N.Y. Sup. Ct. Aug. 11,

2011) (denying motion to dismiss a claim under DCL § 276–a because the plaintiff adequately

pleaded a claim under DCL § 276 and is entitled to assert a claim for attorneys' fees if the court

finds that a fraudulent conveyance was made under DCL § 276).

---

[15]    DCL § 276–a provides in pertinent part:

In an action or special proceeding brought by a . . . trustee in bankruptcy . . . to set aside a
conveyance by a debtor, where such conveyance is found to have been made by the debtor and
received by the transferee with actual intent, as distinguished from intent presumed in law, to
hinder, delay or defraud either present or future creditors, in which action or special proceeding
the . . . trustee in bankruptcy . . . shall recover judgment, the justice or surrogate presiding at the
trial shall fix the reasonable attorney's fees of the . . . trustee in bankruptcy . . .  in such action or
special proceeding, and the . . . trustee in bankruptcy . . . shall have judgment therefor against the
debtor and the transferee who are defendants in addition to the other relief granted by the
judgment . . . .

Accordingly, the motion to dismiss Count VI is denied as to Edidin Defendants with respect to the September 2009 transfers and is otherwise granted.

## D.    Constructive Fraudulent Transfers

Among other things, Count I asserts a claim for constructive fraudulent transfer under Bankruptcy Code § 548(a)(1)(B).[16]  Counts II, III and IV seek to avoid the Transfers through 11 U.S.C. § 544(b) under DCL §§ 273, 274 and 275, respectively.[17]  The principal difference between the New York and bankruptcy constructive fraudulent transfer provisions concerns the burden of pleading and proving good faith.  Good faith is an affirmative defense under Bankruptcy Code § 548(c) that the transferee must plead and prove.  *Dreier*, 462 B.R. at 484 n. 10.  Under New York law, good faith is an element of "fair consideration," *see* DCL § 272, the

---

[16]     Section 548(a)(1)(B) provides, in relevant part, that the trustee can avoid an obligation or transfer where the debtor:

> (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or] (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

[17]     DCL § 273 provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

DCL § 274 provides:

> Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

DCL § 275 provides:

> Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

analogue to "reasonably equivalent value" under the Bankruptcy Code, and hence, part of the plaintiff's affirmative case.

The Edidin Defendants have not distinguished between the state law and bankruptcy law constructive fraudulent transfer claims or argued that the plaintiff failed to plead lack of good faith.  Instead, they lump all of the constructive fraudulent transfer claims together, and raise the following deficiencies: (1) the plaintiff fails to allege sufficiently that the Debtor did not receive fair consideration, (2) she alleges fraud on information and belief, (3) she fails to allege what was transferred to Gary and/or Franklin, and finally, (4) she fails to allege that the Debtor was insolvent or rendered insolvent at the time of the transfer, or facts supporting her claims under alternative financial tests imposed in DCL §§ 274 and 275.  (*Defendants' Memo* at 12-14.)

As noted earlier, the *Complaint* sufficiently alleges that the Transfers were not supported by fair consideration or reasonably equivalent value.  In addition, the *Complaint* together with the Letters adequately allege alternative theories that Gary through Edidin Associates initially received the Transfers and Franklin subsequently received the Transfers, or Franklin initially received the Transfers.  Furthermore, the *Complaint* and Letters contained sufficient facts, not alleged on information and belief, to support the claims to the extent noted.  The remaining objection relates to the allegations concerning the financial tests.

### 1.    Insolvency

DCL § 273 and Bankruptcy Code § 548(a)(1)(B)(ii)(I) impose a financial test of insolvency.  Under New York law, "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."  DCL § 271(1).  This is a "balance sheet test."  *See*

16

*In re Gordon Car & Truck Rental, Inc.*, 59 B.R. 956, 961 (Bankr. N.D.N.Y. 1985). Similarly, bankruptcy law insolvency is determined by the "balance sheet test" under which the debtor is insolvent if its assets exceeded its liabilities at the time of the transfer. *Universal Church v. Geltzer*, 463 F.3d 218, 226 (2d Cir. 2006) (citing 11 U.S.C. § 101(32)(A)), *cert denied*, 549 U.S. 1113 (2007). Under New York law, the debtor who transfers property without fair consideration is presumed to be insolvent, and the burden shifts to the transferee to rebut the presumption. *Feist v. Druckerman*, 70 F.2d 333, 334 (2d Cir. 1934); *Geron v. Schulman (In re Manshul Constr. Corp.)*, No. 97 Civ. 8851, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 30, 2000); *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 938 (S.D.N.Y. 1995); *Silverman v. Paul's Landmark, Inc. (In re Nirvana Restaurant, Inc.)*, 337 B.R. 495, 505 (Bankr. S.D.N.Y. 2006). The same presumption has been applied to constructive fraudulent transfer litigation under 11 U.S.C. § 548. *See Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 672 (Bankr. E.D.N.Y. 2008). The *Complaint* alleges facts showing that the Debtor did not receive reasonably equivalent value or fair consideration for the Transfers, and accordingly, pleads insolvency.

### 2.    Unreasonably Small Capital

Under DCL § 274 and Bankruptcy Code § 548(a)(1)(B)(ii)(II), the plaintiff must plead facts supporting the allegation that at the time of the transfers, the Debtor was engaged in or about to engage in a business or a transaction that would leave it with unreasonably small capital. This test denotes a financial condition short of equitable insolvency, *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1070 (3d Cir. 1992); *MFS/Sun Life*, 910 F. Supp. at 944, and "is aimed at transferees that leave the transferor technically solvent but doomed to fail." *MFS/Sun Life*, 910 F. Supp. at 944; *accord Manshul*, 2000 WL 1228866, at *54. The relevant factors

17

include the transferor's debt to equity ratio, historical capital cushion, and the need for working

capital in the transferor's industry.  *Manshul*, 2000 WL 1228866, at \*54; *see In re Taubman*, 160

B.R. 964, 986 (Bankr. S.D. Ohio 1993) (Bankruptcy Code § 548(a)(1)(B)(ii)(II) requires an

analysis involving an examination of the debtor's cash flow and available operating capital

through its ability to generate enough cash from operations to pay its debts and remain

financially stable); *Vadnais Lumber Supply, Inc. v. Byrne (In re Vadnais Lumber Supply, Inc.)*,

100 B.R. 127, 137 (Bankr. D. Mass. 1989) (Courts look "to the ability of the debtor to generate

enough cash from operations or asset sales to pay its debts and still sustain itself").

The *Complaint* does not adequately allege that the Debtor was technically insolvent at the

time of the Transfers.  At most, the *Complaint* alleges that the Debtor had failed to pay rent on

the Ninth Avenue store.  It does not allege that the Debtor failed to pay any other debts or that it

lacked the capital to do so.  Furthermore, although the *Complaint* alleges that the Debtor

transferred all of its property and business to Workshop in May 2009, the excerpts of the

September 2009 bank statement attached to the *Complaint* indicate that substantial funds were

moving in and out of the Debtor's bank account, and a number of the payees appear to be trade

vendors.  Moreover, the *Complaint* implies that the Debtor still had assets and continued to

operate the Mercer Street store until March 1, 2010, ten months after the transfer of all its assets

to Workshop.  (¶ 27.)  Finally, the *Complaint* does not allege any facts relating to the Debtor's

sales, its ability to generate cash or its ability to pay its debts and sustain itself.  Accordingly, the

constructive fraudulent transfer claim asserted in Count I, to the extent it is based on the

"unreasonably small capital" test, and Count III are legally insufficient, and are dismissed.

### 3.    Ability to Pay

Under DCL § 275 and 11 U.S.C. § 548(a)(1)(B)(ii)(III), a transfer is fraudulent, *inter alia*, if the debtor *intends* or *believes* that it will incur debts that it will be unable to pay as they become due.  This is generally referred to as equitable insolvency.  *MFS/Sun Life*, 910 F. Supp. at 943.  Although the constructive fraudulent transfer provisions of New York and bankruptcy law do not require proof of *intent to defraud*, the "ability to pay" financial test requires proof of the transferor's subjective intent or belief that it will incur debt it cannot pay at maturity.  *See id.* (noting support for the view that § 275 requires proof of subjective intent); *In re Best Prods. Co.*, 168 B.R. 35, 52 n. 28 (Bankr. S.D.N.Y. 1994) (DCL § 275 requires proof of the transferor's subjective belief that it will incur debts beyond its ability to pay), *aff'd*, 68 F.3d 26 (2d Cir. 1995); *Taubman*, 160 B.R. at 986 ("This prong of § 548(a)(2)(A)–(B) requires the court to undergo a subjective, rather than an objective, inquiry into a party's intent.").

The plaintiff has failed to plead facts satisfying the "ability to pay" test.  First, the *Complaint* does not allege any facts relating to the Debtor's intent to incur debt that it believed it would be unable to pay.  Second, the *Complaint*'s allegations regarding the Debtor's ability to pay its future debts is deficient for the same reason that her allegations of "unreasonably small capital" failed.  Accordingly, the constructive fraudulent transfer claim asserted in Count I, to the extent it is based on the "ability to pay" test, and Count IV are legally insufficient, and are dismissed.

### E.    Unjust Enrichment

Count VII asserts a claim sounding in unjust enrichment.  "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution."  *Kaye v.*

*Grossman*, 202 F.3d 611, 616 (2d Cir. 2000); *accord Mandarin Trading Ltd. v. Wildenstein,* 944

N.E.2d 1104, 1110 (N.Y. 2011). The "essence" of such a claim "is that one party has received

money or a benefit at the expense of another." *City of Syracuse v. R.A.C. Holding, Inc.*, 685

N.Y.S.2d 381, 381 (N.Y. App. Div. 1999); *accord Grossman*, 202 F.3d at 616. The

determination that one has been unjustly enriched is "a legal inference drawn from the

circumstances surrounding the transfer of property and the relationships of the parties . . . ."

*Sharp v. Kosmalski*, 351 N.E.2d 721, 724 (N.Y. 1976). "Although privity is not required for an

unjust enrichment claim, a claim will not be supported if the connection between the parties is

too attenuated." *Mandarin Trading*, 944 N.E.2d at 1111; *accord Sperry v. Crompton Corp.*, 863

N.E.2d 1012, 1018 (N.Y. 2007)

 Each side devotes no more than a page to the sufficiency of the unjust enrichment claim.

The Edidin Defendants essentially argue that it duplicates the fraudulent transfer claims and

should be dismissed for the same reason. (*Defendants' Memo* at 14.) The plaintiff recognizes

that the claim is quasi-contractual, but ultimately relies on the same facts and seeks the same

remedy as the fraudulent transfer claims. (*See Plaintiff's Opposition* at 24-25.)

 The doctrine of fraudulent conveyance rests on principles of unjust enrichment."

RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 48 cmt. a (2011); *accord id.* §

1 cmt. g ("[T]he law of fraudulent conveyance (or 'fraudulent transfer') is obviously based on

principles of unjust enrichment and associated equitable remedies."); *id.* § 67 cmt. i ("The law of

fraudulent conveyance, which long antedates the statutes, is manifestly derived from principles

of unjust enrichment developed in equity jurisprudence."). Thus, fraudulent transfer and unjust

enrichment claims overlap, and as this case shows, both parties essentially view them as

substitutes for each other.

That said, it is conceivable that the plaintiff could recover under one theory but not the

other.  For example, the plaintiff brings the claim for unjust enrichment as statutory successor to

the Debtor, enjoying the same rights but facing the same obstacles.  Under New York law, the

statute of limitations pertaining to an unjust enrichment claim is six years from the wrongful act,

*Coombs v. Jervier*, 906 N.Y.S.2d 267, 269 (N.Y. App. Div. 2010), and is not subject to the two

year bankruptcy statute of limitations that governs avoidance actions under 11 U.S.C. § 546(a).

In addition, the plaintiff does not have to demonstrate actual or constructive intent to defraud, or

pass a financial test, to recover under principles of unjust enrichment.  On the other hand, the

Debtor's inequitable conduct in connection with the Transfers may bar the plaintiff from seeking

restitution under principles of unjust enrichment.  *See* RESTATEMENT (THIRD) OF RESTITUTION &

UNJUST ENRICHMENT § 63 cmt. b (2011) ("The denial of restitution to fraudulent grantors—

distilled in the rule that a fraudulent conveyance is effective between the parties, though

ineffective against the grantor's creditors—furnishes the most prominent potential application of

the rule of this section.").  Thus, the stronger the intentional fraudulent transfer case, the weaker

the right to restitution based on unjust enrichment.

Based on the foregoing, and in light of the inadequate briefing regarding this claim, the

motion to dismiss Count VII is denied.

## F.     Preferences

Count VIII seeks to recover the September 2009 transfers to the Edidin Defendants as

preferential transfers pursuant to 11 U.S.C. § 547, which states:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may
> avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;

21

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made-- (A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if-- (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The preference claims asserted against Franklin on the one hand and Gary/Edidin Associates on the other raise different issues and are analyzed separately below.

### 1.      Franklin

A trustee can avoid preferential transfers made within 90 days of the petition date, but if the transferee is an insider, the trustee can recover transfers made within one year of the petition date.  11 U.S.C. § 547(b)(4).  The September 2009 transfers were made between 90 days and one year before the petition date.  Hence, the *Complaint* must plead, among other elements, that the transferee was an insider of the Debtor.  The *Complaint* alleges that Gary is a director and "owner" of the Debtor, and he is, therefore, an insider.  The *Complaint* also pleads the insider status of Edidin Associates, Gary's wholly-owned unincorporated association.  It falls short, however, in alleging Franklin's insider status.

In the case of a corporate debtor, "[t]he term 'insider' includes . . . (i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner,

director, officer, or person in control of the debtor." 11 U.S.C. § 101(31)(B).[18] This list is not

exhaustive, and courts have recognized other relationships that give rise to the status as an

insider, *viz.* the non-statutory insider. *See Schubert v. Lucent Techs., Inc. (In re Winstar*

*Commc'ns, Inc.)*, 554 F.3d 382, 395 (3d Cir. 2009). A non-statutory insider does not have to

exercise actual control over the debtor; "rather, the question 'is whether there is a close

relationship [between debtor and creditor] and . . . anything other than closeness to suggest that

any transactions were not conducted at arm's length.'" *Id.* at 396-97 (quoting *Anstine v. Carl*

*Zeiss Meditec AG (In re U.S. Med.)*, 531 F.3d 1272, 1277 (10th Cir. 2008); *accord In re So.*

*Beach Secs., Inc.*, 606 F.3d 366, 377 (7th Cir. 2010); *Hirsch v. Tarricone (In re A. Tarricone)*,

286 B.R. 256, 262 (Bankr. S.D.N.Y. 2002) (collecting cases).

The plaintiff argues that Franklin is an insider because it is owned by insider Gary. In

addition, although the defendants produced a "generic Factoring Agreement," UCC-1 Statements

and invoices bearing an "alleged" stamp that they were payable to Franklin, they have failed to

produce bank statements of Edidin Associates "that would demonstrate to the Trustee that

payment was indeed remitted to Franklin and that the Debtor's notations are inaccurate."

(*Plaintiff's Opposition* at 27.) From this, the plaintiff reasons that "[a] lack of proper

documentation evidencing a transaction is a factor which can be considered by a Court in

determining whether a transferee is a non-statutory insider." (*Id.* (citing cases).)

Neither argument is persuasive. A corporation that is wholly-owned by an insider of the

debtor is not, *per se*, also an insider of the debtor. *Miller Ave. Prof'l & Promotional Servs., Inc.*

*v. Brady (In re Enter. Acquisition Partners, Inc.)*, 319 B.R. 626, 632 (B.A.P. 9th Cir. 2004);

---

[18]    An "insider" also includes an "affiliate, or insider of an affiliate as if such affiliate were the debtor." 11
U.S.C. § 101(31)(E). The plaintiff has not relied on this provision in arguing the insider status of any of the Edidin
Defendants.

*Glassman v. Heimbach, Spitko & Heckman (In re Spitko)*, Adv. Pro. No. 05-0258, 2007 WL

1720242, at *8-9 (Bankr. E.D. Pa. June 11, 2007). The *Complaint* must allege something

more.[19] Furthermore, while the plaintiff criticizes Franklin's "lack of documentation," its

informal document production shows that Franklin and the Debtor were parties to a Factoring

Agreement, Franklin eventually received the Transfers (regardless of whether they first passed

through Edidin Associates' account), and the payments correspond to the two factored invoices

attached to the July 9, 2012 letter and stamped payable to Franklin. Thus, the production meets

all of the alleged deficiencies cited by the plaintiff. Accordingly, the *Complaint* fails to allege

facts demonstrating that Franklin is an insider of the Debtor.

This does not, however, end the inquiry. As noted, the Letters indicate that Franklin may

be the subsequent transferee of Edidin Associates. If the plaintiff can avoid the September 2009

transfers to Edidin Associates, she may still be able to recover their value from Franklin. *See* 11

U.S.C. § 550(a)(2).

### 2.    Edidin Associates

Aside from the allegations of insider status discussed above, the Edidin Defendants

identify two deficiencies in the preference claim. The *Complaint* fails to plead that the

September 2009 transfers were made in payment for an antecedent debt owed by the Debtor to

Edidin Associates, 11 U.S.C. § 547(b)(2), and that the transfers either enabled Edidin Associates

to receive more than if this were a chapter 7 case, or the transfers were never made and Edidin

---

[19]    The *Complaint* alleges "[u]pon information and belief, Defendants Gary Edidin, Edidin and Associates
and/or Franklin possessed a professional or business relationship with the Debtor and are 'insiders' of the Debtor
pursuant to the Bankruptcy Code." (¶ 104.) This conclusory allegation is not entitled to any consideration.

12-01783-smb    Doc 20    Filed 03/21/13    Entered 03/21/13 16:24:32    Main Document
Pg 25 of 28

Associates instead received payment on the debt pursuant to the provisions of the Bankruptcy

Code.  11 U.S.C. § 547(b)(5).

Both arguments have merit.  The *Complaint* fails to plead any facts suggesting that the

September 2009 transfers satisfied a debt that the Debtor owed to Edidin Associates.  The

*Complaint* includes factual allegations, discussed earlier, that the Transfers were not supported

by consideration.  Furthermore, the *Complaint* does not hint at any debt owed by the Debtor to

Edidin Associates (or Gary).  The Letters support a claim that the Debtor might have owed a debt

to Franklin because of the Factoring Agreement or because the Debtor received payment of the

Levi Strauss invoices by mistake, but that debt would have been owed to Franklin, not Edidin

Associates.

The *Complaint* also fails to plead facts suggesting that Edidin Associates received a

"greater amount" on its debt than it would have received in a hypothetical chapter 7 case.

Bankruptcy Code § 547(b)(5) essentially imposes an improvement of position test, and the

plaintiff must plead facts showing that that there are creditors in the same class that would

receive less than 100% of their claims from the bankruptcy estate.  *See United Rentals, Inc. v.*

*Angell*, 592 F.3d 525, 531 (4th Cir.), *cert. denied*, 131 S. Ct. 121 (2010); *Savage & Assocs., P.C.*

*v. Mandl (In re Teligent, Inc.)*, 380 B.R. 324, 339 (Bankr. S.D.N.Y. 2008).  The *Complaint* does

not include any allegations regarding the Debtor's assets and liabilities on the petition date, the

starting point for the analysis.[20]  Moreover, the plaintiff did not respond to the Edidin

Defendants' argument that the *Complaint* failed to plead facts supporting the "greater amount"

---

[20]     The plaintiff had benefitted from the presumption of insolvency *at the time of the transfer* to support her
constructive fraudulent transfer claims, but does not get the same presumption on her preference claim.  The
Bankruptcy Code expressly limits the insolvency presumption to transfers made within 90 days of the petition date.
*See* 11 U.S.C. § 547(f).  Furthermore, the relevant inquiry under § 547(b)(5) is solvency on the petition date and not
on the date of the transfer.

element under § 547(b)(5), and the failure to respond is deemed to constitute an abandonment of the claim. *See Bonilla v. Smithfield Assocs. LLC*, No. 09 Civ. 1549(DC), 2009 WL4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (Chin, J.).

Accordingly, Count VIII fails to state a claim sounding in preference against the Edidin Defendants, and is dismissed.

## G.    Conspiracy

Count IX asserts that the defendants were engaged in a conspiracy to defraud the Debtor's creditors by creating Workshop to take over the Debtor's business and shield its remaining assets from the Debtor's existing creditors, taking contradictory positions regarding the connection between the Debtor and Workshop and making the Transfers.  (¶¶ 113-15.) Although the parenthetical title of Count IX states that it is asserted "against all defendants," it appears instead to be limited to the individual defendants.  It refers to the individuals as the "Operations NY Defendants," and attributes the wrongful conduct that forms the conspiracy to the "management" and "owners" of the Debtor.  (*See* ¶¶ 113-15.)  Finally, the penultimate paragraph of the *Complaint* avers that "[e]ach of the individual defendants conspired together and intentionally participated in this course of action."  (¶ 117.)

"Under New York state law, a plaintiff may claim civil conspiracy alongside an 'otherwise actionable tort.'"  *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 588 (S.D.N.Y. 2012).  The plaintiff must "demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  *Treppel v. Biovail Corp.*, No. 03 Civ. 3002(PKL), 2004 WL 2339759, at *19

(S.D.N.Y. Oct. 15, 2004); *accord Haber*, 847 F. Supp. 2d at 589; *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006).

Even where Federal Civil Rule 8(a) supplies the standard for pleading, the complaint must specify what each conspirator did.  "To state a claim for conspiracy, the amended complaint must set forth facts supporting the claim that each of the alleged co-conspirators knowingly participated in the conspiracy.  [Citations omitted.]  Moreover, it is not sufficient to merely identify an individual as a corporate officer.  Rather, a corporate officer's participation in a conspiracy must be specifically set forth." *Lippe v. Bairnco Corp.*, 230 B.R. 906, 919 (S.D.N.Y. 1999); *see New York v. Dairylea Coop., Inc.*, 570 F. Supp. 1213, 1216 (S.D.N.Y. 1983) (complaint that pled a conspiracy by all individual defendants failed to comply with Federal Civil Rule 8(a) because "before a corporate officer or employee should be required to undergo the rigors and expense of defending an action of such sweeping scope, the plaintiff has the obligation to state with some specificity allegations of conduct which would, if proved, render such an individual liable as a participant in the alleged conspiracy").

Initially, the only possible tortious conduct that the *Complaint* pleads relates to the fraudulent nature of the Transfers.[21]  Although the *Complaint* includes other allegations of

---

[21]     Technically, a fraudulent conveyance is not a tort under New York law.  *United States v. Franklin Nat'l Bank*, 376 F. Supp. 378, 384 (E.D.N.Y. 1973).  Nevertheless, courts have recognized that a fraudulent conveyance may serve as the predicate for a civil conspiracy claim.  *See Excelsior Capital LLC v. Allen*, No. 11 Civ. 7373(CM), 2012 WL 4471262, at *13 (S.D.N.Y. Sept. 26, 2012) ("At least one court in this district has explicitly recognized a cause of action for a conspiracy to commit a fraudulent conveyance") (citing *UFCW Local 174 Commercial Health Care Fund v. Homestead Meadows Foods Corp.*, No. 05 Civ. 7098(DLC), 2005 WL 2875313, at *2 (S.D.N.Y. Nov. 1, 2005) ("The plaintiff in this case has pled a conspiracy to commit fraudulent conveyance, which is a species of tort, as well as the substantive claim of fraudulent conveyance."); *cf. Fundación Presidente Allende v. Banco de Chile*, No. 05 CV 9771(GBD), 2006 WL 2796793, at *3 (S.D.N.Y. May 29, 2006) ("A fraudulent conveyance conspiracy claim cannot survive absent a showing that defendants had control over the transferred assets or that they benefitted from the conveyance."); *FDIC v. Porco*, 552 N.E.2d 158, 160 (N.Y. 1990) (The DCL does not create a remedy against non-transferees who are not alleged to have dominion or control over the conveyed assets or benefitted from the conveyance).

wrongdoing stemming from the Debtor's alleged transfer of assets to Workshop and its dispute

with CVA, it does not purport to state a claim or seek relief for those acts.  Furthermore, the

*Complaint* does not specify how each individual defendant participated in the conspiracy.  "[T]o

state a claim for conspiracy to commit a fraudulent conveyance, a plaintiff must allege facts

showing that the conspirator committed an overt act that furthered the conveyance itself."

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs.)*, 379 B.R. 5, 36 (Bankr. E.D.N.Y.

2007).  Instead, Count IX "group pleads" the conspiracy charge lumping the defendants together.

Accordingly, Count IX is dismissed.

## CONCLUSION

The motion to dismiss Count I is denied insofar as it asserts an intentional fraudulent

transfer claim regarding the September 2009 transfers and a constructive fraudulent transfer

claim based on the Debtor's insolvency, and is otherwise granted.  The motion is granted with

respect to Counts III, IV, VIII and IX, and denied with respect to Counts II and VII.  Finally, the

motion to dismiss Counts V and VI is denied insofar as these Counts assert claims based on

intentional fraudulent conveyance regarding the September 2009 transfers, and is otherwise

granted.  The parties are directed to consult regarding a discovery schedule and contact chambers

to schedule a pre-trial conference.  Settle order on notice.

Dated: New York, New York
       March  21, 2013


                                    /s/ *Stuart M. Bernstein*
                                    STUART M. BERNSTEIN
                                    United States Bankruptcy Judge